XENOS YUEN, Appellant,

v.

**Barry A. FISHER and Fleishman & Fisher, Appellees.**

**No. 01–06–00010–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 22, 2007.

Allecia Yuvette Lindsey, Stephen E. Menn, Law Office of Stephen E. Menn, Houston, TX, for Appellant.

Jeremiah J. Anderson, Penn Christopher Huston, King & Spalding, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices JENNINGS and BLAND.

## OPINION

JANE BLAND, Justice.

Xenos Yuen appeals the trial court's order granting a special appearance filed by appellees, Barry Fisher and his law firm, Fleishman & Fisher (collectively "Fisher"). We conclude that (1) the trial court properly set aside a default judgment entered against Fisher, after learning that Fisher had specially appeared in the case but did not receive notice of the default judgment hearing; (2) Fisher did not waive his special appearance; (3) viewing the facts in a light favorable to the trial court's ruling, the record does not satisfy the requirements of due process and the Texas long-arm statute so as to confer personal jurisdiction on the trial court; and (4) the trial court did not abuse its discretion in denying Yuen's motion for new trial. We therefore affirm the order of the trial court.

## I. BACKGROUND

### *Chinese Arbitration Case*

In 2002, Yuen, a Texas attorney, brought a proceeding in California federal court to confirm and enforce an arbitration award obtained by a Chinese company against a California business ("the Chinese arbitration case"). Yuen decided to retain local counsel in the Central District of California. One of Yuen's Texas-based employees, Charles Hunter, knew Fisher, an attorney licensed in California. Hunter asked Fisher if he would be interested in serving as local counsel. Fisher accepted and, by 2004, assumed full responsibility for the case. All of Fisher's work for the case occurred in California, although he occasionally communicated with Hunter and Yuen regarding the status of the case.

Fisher eventually moved to withdraw as local counsel because Yuen refused to pay for his services. In opposition to Fisher's motion to withdraw, Yuen filed a declaration with the California court, dated June 24, 2004, in which he stated as follows:

My relationship with Mr. Fisher was never about money, but about friendship and mutual interests in developing business in the Orient. We worked together on several international matters without ever asking for or receiving compensation. The one time we tried to form a business relationship, we failed. However, this failure should not be allowed to harm plaintiff.

The California court granted Fisher's motion to withdraw, and Fisher later sued Yuen in Los Angeles superior court for his unpaid fees. The parties subsequently agreed to arbitrate the fee dispute. During the arbitration, Yuen claimed that he was entitled to an offset for fees Fisher owed him pursuant to a second business relationship. Specifically, Yuen asserted that Fisher had asked him to recruit clients for a potential lawsuit against the largest monosodium glutamate ("MSG")[1] manufacturer in Japan, and that he had incurred $35,000 of time and expenses in doing so. The arbitrator granted Fisher his fees and denied Yuen any offset.

### The MSG Case

Soon thereafter, Yuen filed the present case against Fisher in Texas state court, alleging a gamut of claims: breach of contract, quantum meruit, unjust enrichment, tortious interference with existing and prospective business relationships, promissory estoppel, fraud, violations of the Deceptive Trade Practices Act, fraudulent inducement, and negligent misrepresentation. Factually, Yuen avers in his affidavit in opposition to Fisher's special appearance that Fisher called him and asked him to perform an investigation in China, Hong Kong, and Taiwan concerning the degree to which Japanese manufacturers had monopolized the market for imported MSG. He asserts that it was his understanding that Fisher would compensate him and his associates for their time spent conducting the investigation, which spanned a period of two months, but Fisher never did so.

Fisher responded to the lawsuit by filing a special appearance, supported with his affidavit and one from Hunter. In them, both men aver that, in the spring of 2003, during a telephone call between Hunter and Fisher concerning the Chinese arbitration case, Fisher mentioned to Hunter that a Washington, D.C. law firm was interested in locating a business in Asia that could serve as a plaintiff in a proposed lawsuit complaining of price fixing in the international MSG market. Fisher inquired in passing whether Yuen had any clients that might have been affected by the alleged anti-competitive activity. Hunter subsequently conveyed Fisher's inquiry to Yuen, who told Hunter that he did not have time to check into it. That summer, Yuen traveled to China, and upon returning, he told Hunter that a friend had informed him that the MSG markets in Asia did not suffer from monopolistic pricing and that Fisher should look elsewhere for his plaintiff. Hunter conveyed this information to Fisher. Both men aver in their affidavits that Fisher never spoke directly with Yuen regarding the MSG matter, and that Fisher never mentioned any sort of payment.

Yuen responded to the special appearance with a business records affidavit attaching telephone messages from his secretary that reflect phone calls from Fisher to either Yuen or Hunter beginning in September 2003, as well as e-mail communications among all three men beginning in September 2003. Yuen avers in his affidavit that all of these communications concerned the MSG matter.

A month and a half after Fisher filed his special appearance, Yuen moved for a default judgment on the ground that Fisher had not answered the lawsuit. Yuen did not serve the motion on Fisher or notify him of the default judgment hearing. The trial court subsequently entered a default judgment against Fisher.

Subject to his special appearance, Fisher moved to set aside the default judgment. In the same motion, he asked the court to

---

1. MSG is a flavor enhancer used in processed foods.

rule on the special appearance, and, in the event the court denied the special appearance, he requested sanctions against Yuen. The trial court, on its own motion, set aside the default judgment and continued the special appearance hearing so that Yuen could depose Fisher. The court subsequently granted Fisher's special appearance and dismissed the case with prejudice for refiling in Texas.

Yuen moved for a new trial, attaching to his motion additional cellular telephone records and e-mail communications that allegedly demonstrate Fisher's contacts with Texas. The trial court denied the motion and this appeal followed.

## II. ANALYSIS

### A. Default Judgment

Yuen contends the trial court erred in setting aside the default judgment against Fisher, on its own motion, after learning that Fisher had filed a special appearance in the case. Yuen maintains that a special appearance is not an answer, and cites *LBL Oil Co. v. International Power Services, Inc.* for the proposition that "[t]he Texas Supreme Court only requires that notice be served of a hearing on a **post-appearance** motion for default judgment." 777 S.W.2d 390 (Tex.1989).

In *LBL*, characterized by the Texas Supreme Court as a "post-appearance default judgment case," the plaintiff had sued "LBL Oil Company, a Texas corporation," on a sworn account. *Id.* at 390. R.H. Lindley, an Oklahoma citizen, filed a pro se motion to dismiss, alleging that he was the sole owner of the unincorporated business "LBL Oil Company," an "Oklahoma 'dba,'" and that the Texas court did not have jurisdiction over him. *Id.* Lindley did not file an answer. Id. The plaintiff subsequently moved for a default judgment, but did not serve the motion on Lindley. *Id.* Nor did he serve Lindley with notice of the default judgment hearing. *Id.*

The Texas Supreme Court reversed the default judgment, stating as follows:

Once a defendant has made an appearance in a cause, he is entitled to notice of the trial setting as a matter of due process under the Fourteenth Amendment to the federal constitution, as set forth in *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988). *See Lopez v. Lopez,* 757 S.W.2d 721, 723 (Tex.1988). The record here establishes that Lindley had no actual or constructive notice of the hearing on the motion for default judgment, which effectively was his trial setting since it was dispositive of the case.

*Id.* at 390–91.

█ Here, Fisher's special appearance constituted an "appearance," similar to that made by Lindley in *LBL*, sufficient to entitle him to notice of the default judgment hearing. *Id.; see also In re Brilliant,* 86 S.W.3d 680, 693 (Tex.App.-El Paso 2002, no pet.) (concluding that appellant's "plea to the jurisdiction constituted an appearance" sufficient to entitle her to notice of default judgment hearing); *Santex Roofing & Sheet Metal, Inc. v. Venture Steel, Inc.,* 737 S.W.2d 55, 56 (Tex.App.-San Antonio 1987, no writ) ("Texas courts have always been reluctant to uphold a default judgment without notice where some response from the defendant is found in the record."). As in *LBL*, there is no certificate of service on Yuen's motion for default judgment, and Fisher's affidavit confirms that Yuen did not serve him with the default judgment motion. Likewise, there is no notice of the default judgment hearing in the record. Fisher avers in his affidavit that he first learned of the default judgment when he received a postcard no-

tice from the trial court informing him that it had signed a default judgment.

Because the record establishes that Fisher had no actual or constructive notice of the default judgment hearing, we conclude that the trial court did not abuse its discretion in setting aside the default judgment. *LBL*, 777 S.W.2d at 391; *Brilliant*, 86 S.W.3d at 693.

## B. Special Appearance

Yuen contends the trial court erred in granting Fisher's special appearance because (1) Fisher waived the special appearance by asking the court to impose sanctions on Yuen's counsel, and (2) Fisher had sufficient contacts with Texas to warrant the exercise of both general and specific jurisdiction.

### 1. Waiver

Yuen contends Fisher waived his special appearance by asking, in his motion to set aside the default judgment, that the trial court impose sanctions against Yuen's counsel.

 A party waives his special appearance if he seeks "affirmative relief or invoke[s] the trial court's jurisdiction on any question other than the court's jurisdiction prior to the trial court ruling on the special appearance." *Lang v. Capital Res. Invs., I & II, LLC*, 102 S.W.3d 861, 864 (Tex.App.-Dallas 2003, no pet.) (citing *Dawson–Austin v. Austin*, 968 S.W.2d 319, 322 (Tex.1998)). Here, although Fisher's motion to set aside the default judgment seeks affirmative relief from the trial court in the form of sanctions, Fisher did not seek such relief *prior to* the trial court ruling on the special appearance. To the contrary, Fisher expressly moved for sanc-

tions "subject to" resolution of the special appearance.

Moreover, Fisher's motion for sanctions was made in the alternative—that is, he requested that the court impose sanctions only in the event that it denied his special appearance.[2] Because the court granted the special appearance, it never heard or ruled on Fisher's alternative motion for sanctions. Accordingly, Fisher did not invoke the court's jurisdiction by making a general appearance, and he therefore did not waive his special appearance. *See Silbaugh v. Ramirez*, 126 S.W.3d 88, 93–94 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (holding that appellant did not waive her special appearance by filing motion to quash and motion to strike because motions were "never heard or ruled on by the trial court"); *see also Lang*, 102 S.W.3d at 864–65 (in default judgment case, holding that appellant's offer in motion for new trial to participate in all necessary hearings and proceed to trial on merits did not constitute general appearance because motion for new trial was made subject to special appearance, and further holding that where appellant set motion for new trial and special appearance for hearing on same day, appellant did not make general appearance because he objected to trial court's decision to proceed on motion for new trial before ruling on special appearance); *Minucci v. Sogevalor, S.A.*, 14 S.W.3d 790, 800 (Tex.App.-Houston [1st Dist.] 2000, no pet.) ("[Appellant] did not waive his special appearance by simply filing a notice of oral hearing on the motion to dissolve writ of garnishment."); *Puri v. Mansukhani*, 973 S.W.2d 701, 706–07 (Tex.App.-Houston [14th Dist.] 1998, no pet.) (in default judgment case, holding

---

**2.** The Texas Rules of Civil Procedure expressly permit a party to argue in the alternative. Tex.R. Civ. P. 48; *Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex.1996) ("[O]ur rules expressly permit parties to proceed on alternative theories of relief.").

that appellant did not make general appearance, even though his motion for new trial expressly stated he was "ready to go to trial," because motion for new trial was expressly made subject to special appearance).

### 2. Minimum Contacts

Yuen contends the trial court erred in granting Fisher's special appearance because Fisher had sufficient contacts with Texas to warrant the exercise of both general and specific jurisdiction.

### a. Standard of Review

A Texas court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Fourteenth Amendment's Due Process Clause and the Texas long-arm statute are satisfied. *See* U.S. CONST. amend. XIV, § 1; TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997); *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996). The Texas long-arm statute allows a court to exercise personal jurisdiction over a nonresident defendant who does business in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042. The Texas Supreme Court has repeatedly interpreted this broad statutory language "to reach as far as the federal constitutional requirements of due process will allow." *CSR Ltd.*, 925 S.W.2d at 594 (citations omitted). Therefore, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *Id.*

The United States Constitution permits a state to assert personal jurisdiction over a nonresident defendant only if the defendant has some minimum, purposeful contacts with the state and if the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–

84, 85 L.Ed.2d 528 (1985); *Dawson–Austin*, 968 S.W.2d at 326. A nonresident who has purposefully availed himself of the privileges and benefits of conducting business in the state has sufficient contacts with the state to confer personal jurisdiction. *CSR Ltd.*, 925 S.W.2d at 594.

The "purposeful availment" requirement has recently been characterized by the Texas Supreme Court as the "touchstone of jurisdictional due process." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex.2005). In *Michiana*, the Texas Supreme Court articulated three important aspects of the purposeful availment inquiry. *Id.* at 785. First, only the defendant's contacts with the forum count. *Id.* This ensures that a defendant is not haled into a jurisdiction solely by the unilateral activities of a third party. *Id.* (citing *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183). Second, the acts relied upon must be purposeful; a defendant may not be haled into a jurisdiction based solely upon contacts that are "random, isolated, or fortuitous." *Id.* (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)). Third, a defendant "must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction" because "[j]urisdiction is premised on notions of implied consent—that by invoking the benefits and protections of a forum's laws, a nonresident consents to suit there." *Id.* (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

A defendant's contacts with a forum can give rise to either general or specific jurisdiction. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 227 (Tex. 1991). Specific jurisdiction exists when the claims in question arise from or relate to the defendant's purposeful contacts with

Texas. *Am. Type Culture Collection Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002). In conducting a specific jurisdiction analysis, we focus on the relationship among the defendant, Texas, and the litigation. *See Guardian Royal*, 815 S.W.2d at 228. General jurisdiction, on the other hand, arises when a defendant's "general business contacts" with the forum state are "continuous and systematic," allowing the forum to exercise personal jurisdiction over the defendant even though the cause of action does not arise from or relate to activities conducted within the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984); *CSR Ltd.*, 925 S.W.2d at 595. When general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing that the defendant conducted "substantial activities" in the forum state. *CSR Ltd.*, 925 S.W.2d at 595.

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex.2002). The burden of proof then shifts to the nonresident to negate all possible grounds for personal jurisdiction. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex.1985).

Whether a trial court properly granted a special appearance is a question of law that we review de novo. *BMC Software*, 83 S.W.3d at 794. In making a jurisdictional determination, the trial court must frequently resolve underlying factual disputes. *Id.; Preussag Aktiengesellschaft v. Coleman*, 16 S.W.3d 110, 113 (Tex. App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony.

*Huynh v. Nguyen*, 180 S.W.3d 608, 615 (Tex.App.-Houston [14th Dist.] 2005, no pet.). We may not disturb a trial court's resolution of evidentiary conflicts that turn on credibility determinations or the weight of the evidence. *Benoit v. Wilson*, 150 Tex. 273, 281–82, 239 S.W.2d 792, 796–97 (1951); *Young Chevrolet, Inc. v. Tex. Motor Vehicle Bd.*, 974 S.W.2d 906, 914 (Tex. App.-Austin 1998, pet. denied). Where, as here, a trial court does not issue findings of fact or conclusions of law with its special appearance ruling, all fact findings necessary to support the judgment and supported by the evidence are implied. *BMC Software*, 83 S.W.3d at 795.

### b. General Jurisdiction

Yuen asserts that he "probably ha[s] established general jurisdiction" because Fisher has a national legal practice and regularly litigates cases around the country. Yuen, however, did not provide the trial court with any evidence to demonstrate the extent of Fisher's legal practice in Texas.

To the contrary, the uncontroverted evidence before the trial court shows that Fisher does not maintain a regular place of business in Texas and has no employees, agents, or servants within the state. He has never maintained an office, mailing address, or telephone number in Texas. Nor does he maintain a registered agent for service in Texas. Fisher has never paid any taxes in Texas. Nor does he own or lease any real property in Texas. He does not advertise or regularly solicit business in Texas. Though Fisher was listed as co-counsel in some federal cases in Texas in the 1970s and early 1980s, he has not practiced law in Texas since.

Texas courts often consider "the lack of an office, agent, or the solicitation of business as determinative to the exercise" of

general jurisdiction. *James v. Ill. Cent. R.R.*, 965 S.W.2d 594, 598 n. 1 (Tex.App.-Houston [1st Dist.] 1998, no pet.) (citing *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 772–74 (Tex.1995) (no general jurisdiction where defendant never maintained office or other place of business in Texas and had no agents in Texas); *Int'l Turbine Serv., Inc. v. Lovitt*, 881 S.W.2d 805, 810 (Tex.App.-Fort Worth 1994, writ denied) (no general jurisdiction where defendant did not have office, employee, or market business within Texas); *Clark v. Noyes*, 871 S.W.2d 508, 518–20 (Tex.App.-Dallas 1994, no writ) (no general jurisdiction over individual who had no business interests in Texas); *Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 634–35 (Tex.App.-Dallas 1993, writ denied) (no general jurisdiction over defendant that did not maintain place of business in Texas, had no employees from Texas, and did not solicit business in Texas); *Scott v. Huey L. Cheramie, Inc.*, 833 S.W.2d 240, 242 (Tex.App.-Houston [14th Dist.] 1992, no writ) (no general jurisdiction over corporation that had no office or agent in Texas)). Moreover, a nonresident attorney's occasional representation of Texas residents is ordinarily insufficient to justify the exercise of general jurisdiction. *See, e.g., Klenk v. Bustamante*, 993 S.W.2d 677, 682 (Tex.App.-San Antonio 1998, no pet.) (holding that nonresident attorneys' representation of Texans, long-distance communications with Texas clients, and trips to Texas were insufficient to support general jurisdiction), *disapproved on other grounds by BMC Software*, 83 S.W.3d at 794.

Here, the uncontroverted evidence before the trial court shows that Fisher has no office, employees, or registered agent in Texas; does not regularly solicit business or advertise in Texas; does not regularly practice law in Texas; and has not litigated in Texas for decades. Accordingly, he does not have "continuous and systematic general business contacts" with Texas, and the trial court did not err in granting Fisher's special appearance on the ground that it did not have general jurisdiction over him.

### c. Specific Jurisdiction

Yuen contends the court has specific jurisdiction over Fisher because Fisher called Yuen in Texas to solicit his participation in the MSG enterprise. Yuen cites *Memorial Hospital System v. Fisher Insurance Agency, Inc.*, 835 S.W.2d 645 (Tex.App.-Houston [14th Dist.] 1992, no writ), for the proposition that "[o]ne telephone call is sufficient to satisfy the Texas test when the telephone call constitutes the tortuous [sic] act of negligent misrepresentation."

The Texas Supreme Court expressly disapproved of Memorial Hospital in *Michiana. Michiana*, 168 S.W.3d at 791–92 & n. 81. The *Michiana* court was concerned with the "problems [that] arise if [specific] jurisdiction turns not on a defendant's contacts, but on where it 'directed a tort.'" *Id.* at 790. The court noted that

> changes in technology have made reliance on phone calls obsolete as proof of purposeful availment. While the ubiquity of "caller ID" may allow nonresidents to know a caller's telephone number, that number no longer necessarily indicates anything about the caller's location. If jurisdiction can be based on phone conversations "directed at" a forum, how does a defendant avail itself of any jurisdiction when it can never know where the other party has forwarded calls or traveled with a mobile phone?

*Id.* at 791. The court thus rejected the notion that "a single conversation with a private citizen constitutes purposeful availment of any jurisdiction in which that citizen happens to live." *Id.* at 789.

Rather, the *Michiana* court emphasized that "it is the defendant's conduct and connection with the forum that are critical." *Id.* at 789 (internal quotation marks omitted). "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 784 (internal quotation marks and emphasis omitted). We therefore must look to the "actions and reasonable expectations of the defendant" in conducting a minimum contacts analysis. *Id.* at 790.

■ Here, the evidence before the trial court concerning Fisher's "actions and reasonable expectations" was conflicting. Yuen averred in his affidavit that Fisher called him, knowing he was in Texas, to ask him to perform an investigation in China, Hong Kong, and Taiwan concerning the degree to which Japanese manufacturers had monopolized the market for imported MSG. It was Yuen's understanding that Fisher would compensate him for the two months he spent conducting the investigation. We note that it is undisputed that the investigation would not take place in Texas, and neither party proffered evidence as to where any MSG lawsuit would be filed.

Yuen attached to his affidavit several business records, in the form of telephone messages and e-mail communications among himself, Fisher, and Hunter, that allegedly concern the MSG matter. We have reviewed the e-mail communications and note that, contrary to Yuen's assertions, none of them pertain to the MSG matter. Rather, all of the e-mails involve either personal matters or the Chinese arbitration case. The telephone messages indicate that Fisher placed twelve telephone calls to either Yuen or Hunter beginning in September 2003 and ending in May 2004, but the messages do not indicate the reason for Fisher's calls.

Fisher presented controverting evidence in the form of affidavits from himself and Hunter, as well as a prior inconsistent declaration made by Yuen. Specifically, Fisher and Hunter averred in their affidavits that, during a telephone conversation in the spring of 2003 concerning the Chinese arbitration case, Fisher informed Hunter that a Washington, D.C. law firm was looking for a company to serve as a plaintiff in a contemplated price fixing lawsuit concerning the international MSG market, and Fisher inquired in passing whether Yuen might have any suitable clients. Hunter relayed Fisher's inquiry to Yuen, who informed him that he did not have time to check into it. That summer, after returning from a trip to China, Yuen told Hunter that a friend had informed him that there was no monopolistic pricing in the international MSG market, and Fisher should look elsewhere for his plaintiff.

The trial court also had before it a June 2004 declaration made by Yuen in opposition to Fisher's motion to withdraw as local counsel in the Chinese arbitration case. In his declaration, Yuen swore that his "relationship with Mr. Fisher was never about money, but about friendship and mutual interests in developing business in the Orient. We worked together on several international matters without ever asking for or receiving compensation. The *one time* we tried to form a business relationship [referring to the parties' agreement that Fisher serve as local counsel in the Chinese arbitration case], we failed." (Emphasis added.) The declaration did not mention any MSG business relationship.

■ A trial court "frequently must resolve questions of fact before deciding the [personal] jurisdiction question." *BMC*

*Software*, 83 S.W.3d at 794. In doing so, it is the sole province of the trial court to determine the credibility of the witnesses and to resolve conflicts in the evidence. *Benoit*, 150 Tex. at 281–82, 239 S.W.2d at 796–97; *Huynh*, 180 S.W.3d at 615; *Puri*, 973 S.W.2d at 711. Here, the trial court implicitly resolved the conflicts in the evidence against Yuen and in favor of Fisher by granting the special appearance.

In *Puri*, our sister court confronted a similar situation involving opposing affidavits and conflicting evidence in the special appearance context. 973 S.W.2d at 710–11. The court refused to substitute its judgment for that of the trial court, stating as follows:

> The evidence in this case primarily consists of opposing affidavits and appellee's testimony. Appellant relied only on his own affidavits at the special appearance hearing and produced no documentary or other evidence. Thus, the trial court, as the sole judge of credibility, could resolve the swearing match. We cannot comply with appellant's request that we reevaluate appellee's credibility. We are not fact finders and we do not pass upon the credibility of witnesses or substitute our judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported.

*Id.* at 711; *see also Navasota Res., Ltd. v. Heep Petroleum, Inc.*, 212 S.W.3d 463, 469 (Tex.App.-Austin, 2006, no pet. h.) (refusing to disturb trial court's resolution of evidentiary conflicts and issues of credibility in special appearance context).

We likewise decline to substitute our judgment for that of the trial court. Not only did the court have before it Fisher's and Hunter's controverting affidavits, it also had a prior inconsistent declaration from Yuen himself. Particularly in light of Yuen's sworn declaration that he never entered into a business relationship with Fisher other than in the Chinese arbitration case, we conclude that sufficient evidence supports the trial court's finding that Fisher did not purposefully avail himself of the privileges and benefits of conducting business in Texas by merely requesting in one telephone call that Hunter ask Yuen whether he was aware of any suitable MSG plaintiffs in China. We therefore affirm the trial court's holding that Fisher did not have sufficient minimum contacts with Texas to subject him to the exercise of specific jurisdiction.

## C. Motion for New Trial

Yuen contends the trial court erred in denying his motion for new trial because he provided the court with newly discovered evidence demonstrating fifty-seven telephone contacts between his law firm and Fisher.

 A party who seeks a new trial on the ground of newly discovered evidence must satisfy the court that (1) the evidence has come to his knowledge since the trial, (2) it was not owing to want of due diligence that the evidence did not come to his attention sooner, (3) the evidence is not cumulative, and (4) the evidence is so material that it would probably produce a different result if a new trial were granted. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex.1983); *Summers v. WellTech, Inc.*, 935 S.W.2d 228, 233 (Tex.App.-Houston [1st Dist.] 1996, no writ). We review the trial court's denial of a motion for new trial for an abuse of discretion. *Jackson*, 660 S.W.2d at 809.

 Here, Yuen attached to his motion for new trial additional cellular telephone bills and e-mail communications between Fisher and Hunter. He did not allege, however, that the evidence had come to his attention since the special appearance

hearing. Nor did he explain how it was not through want of his diligence that it had not come to his attention sooner. For these reasons alone, the trial court did not abuse its discretion in denying the motion.

 In addition, "[w]hen a party seeks a new trial based on newly discovered evidence, the motion for new trial must verify that the evidence is true and correct." *Raymond v. Raymond*, 190 S.W.3d 77, 82 (Tex.App.-Houston [1st Dist.] 2005, no pet.). Yuen's motion for new trial is not verified. Accordingly, the trial court did not abuse its discretion in denying the motion based on the additional fact that it was not verified. *Id.*

### III. CONCLUSION

We hold that (1) the trial court properly set aside the default judgment against Fisher, after learning that Fisher had specially appeared in the case but did not receive notice of the default judgment hearing; (2) Fisher did not waive his special appearance by filing an alternative motion for sanctions made subject to the denial of his special appearance; (3) viewing the facts in a light favorable to the trial court's ruling, the record does not satisfy the requirements of due process and the Texas long-arm statute so as to confer personal jurisdiction on the trial court; and (4) the trial court did not abuse its discretion in denying Yuen's motion for new trial. We therefore affirm the order of the trial court.