Opinion Issued October 18, 2007















Opinion Issued October 18, 2007

 

 

 

 

 

 








 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-06-00940-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



PATSY CHAPMAN, Appellant

 

V.

 

RACHEL K. ABBOT, TREVA J. BURKS, AND REBECCA A.
SHEEHAN, Appellees

 

 



On Appeal from the 280th District Court

Harris County, Texas

Trial Court Cause No. 2005-56781








 

 



O P I N I O N

 

          In
a dispute over the proper recipient of life insurance proceeds from a policy
purchased by her ex-husband, Patsy Chapman appeals a summary judgment in favor
of his daughters, Rachel K. Abbot, Treva J. Burks, and Rebecca A. Sheehan.  Chapman contends that the trial court erred
in granting summary judgment in favor of the daughters because genuine issues
of material fact exist as to the terms of a divorce decree and the validity of
a power of attorney.  We conclude that
the trial court properly granted summary judgment and therefore affirm.

Background

          On
January 16, 2002, Chapman and James Carrell Guyton executed an agreed divorce
decree and divorced.  The decree contains
the following contractual provisions regarding alimony and insurance:

9.3     AMOUNT

 

[Guyton] will pay to [Chapman] $2,200.00, per month,
in two payments of $1,100.00 each, as and for alimony.  These payments will be payable monthly, on or
before the 1st and 15th day of each month, beginning on February 1, 2002. 

 

9.4     TERM

 

The payments will be payable until February 1, 2005,
or [Chapman] dies, or [Chapman] remarries, whichever occurs first.

 

. . . .

 

9.6     INSURANCE

 

As long as alimony is payable under this article,
[Guyton] will keep the life insurance at Oldline Life Insurance, Policy Number
5-2063321L in full force and effect, at [Guyton’s] expense, in the face amount
of $50,000.00 naming [Chapman] irrevocable beneficiary.

 

It is the intent of [Guyton] and [Chapman] that in the
event of the death of [Guyton] during the term of the alimony contract that the
entire sum of the life insurance proceeds of $50,000.00 shall be due and
payable to [Chapman] in addition to those sums paid pursuant to the parties[’]
monthly contractual alimony package.  

 

          Throughout
2002, 2003, and 2004, Guyton timely paid alimony and maintained a $50,000 life
insurance policy with Chapman named as the beneficiary, in accordance with the
divorce decree.  On December 13, 2004,
Guyton gave Chapman an alimony check for $1,100, and wrote “Final Alimony” at
the bottom of the check.  The December 13
alimony payment was the seventy-second alimony payment Guyton made under the
decree.  

On December 30, 2004, Guyton executed
a statutory durable power of attorney naming Sheehan as his
attorney-in-fact.  See Tex. Prob. Code Ann.
§ 490 (Vernon 2003).  On January 10,
2005, Sheehan used the power of attorney to change the beneficiary designation
of the $50,000 life insurance policy. 
Sheehan named herself, Abbot, and Burks as the new beneficiaries of the
policy.  Guyton died of pneumonia the
following day.  

          In
August 2005, American General Life Insurance Company filed a petition in
interpleader against Chapman, Abbot, Burks, and Sheehan, seeking a judicial
determination of the proper beneficiary of the life insurance policy.  See
Tex. R. Civ. P. 43.  The daughters moved for summary judgment,
asserting that they were entitled to the proceeds of the insurance policy as a
matter of law, or alternatively, that Chapman had produced no evidence that
Guyton had breached the divorce decree by changing the beneficiary of the life
insurance policy.  In the motion, the
daughters contend that the December 13 payment terminated Guyton’s alimony
obligation under the agreement incorporated in the divorce decree, as well as
his obligation to maintain a life insurance policy in favor of Chapman.  The trial court granted the summary judgment
without specifying the grounds, ruling that the daughters were entitled to the proceeds
of the life insurance policy. 

Summary Judgment

A.  Standard of Review

We review a
trial court’s summary judgment de novo.  Valence Operating Co. v.
Dorsett, 164
S.W.3d 656, 661 (Tex. 2005); Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  Under the traditional standard for summary judgment, the movant has the burden to show that no genuine issue
of material fact exists and that the trial court should grant a judgment as a
matter of law.  Tex.
R. Civ. P. 166a(c); KPMG Peat Marwick v. Harrison County
Hous. Fin. Corp., 988
S.W.2d 746, 748 (Tex.
1999).  When reviewing a
summary judgment, we take as true all evidence favorable to the nonmovant, and
indulge every reasonable inference and resolve any doubts in the nonmovant’s
favor.  Dorsett, 164 S.W.3d at 661;
Knott, 128 S.W.3d
at 215; Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).[1]  

B.  Contract Interpretation

“An agreed divorce decree
is a contract subject to the usual rules of contract interpretation.”  Broesche v. Jacobson,
218 S.W.3d 267, 271 (Tex. App.—Houston [14th
Dist.] 2007, pet. denied); McKnight v. Trogdon-McKnight, 132
S.W.3d 126, 131–32 (Tex. App.—Houston
[14th Dist.] 2004, no pet.); Harvey v. Harvey, 905 S.W.2d 760, 764
(Tex. App.—Austin
1995, no writ).  Our primary concern when
interpreting a contract is to ascertain and give effect to the intent of the
parties as it is expressed in the contract.  Seagull Energy E & P, Inc. v. Eland
Energy, Inc., 207 S.W.3d 342, 345 (Tex.
2006).  To achieve this objective, courts should
examine the entire writing in an effort to harmonize and give effect to all the
provisions of the contract so that none will be rendered meaningless.  Dorsett, 164 S.W.3d at 662.  

Whether a contract is
ambiguous is a question of law for the court. 
Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex.
1996).  If the contract is so worded that
it can be given a certain or definite legal meaning or
interpretation, then it is not ambiguous, and a court should construe
the contract as a matter of law.  SAS Inst., Inc. v. Breitenfeld, 167 S.W.3d 840, 841 (Tex. 2005); ACS
Investors, Inc. v. McLaughlin,
943 S.W.2d 426, 430 (Tex. 1997).  We construe an unambiguous contract according to the plain meaning of its express wording.  Lyons v. Montgomery, 701 S.W.2d 641, 643 (Tex.
1985).  Unambiguous contracts
are enforced as written.  Heritage
Res., Inc., 939 S.W.2d at
121. 

“A contract is ambiguous when its meaning is
uncertain and doubtful or is reasonably susceptible to more than one
interpretation.”  Id.  We determine whether a contract is ambiguous by
looking at the contract as a whole in light of the circumstances present when
the parties entered the contract.  Universal
Health Servs., Inc. v. Renaissance Women’s Group, P.A., 121 S.W.3d 742, 746 (Tex.
2003).  If a contract is
determined to be ambiguous, then a court may consider extraneous evidence to
ascertain the true meaning of the instrument. 
Nat’l Union Fire Ins. Co. v. CBI
Indus., Inc., 907 S.W.2d 517, 520 (Tex.
1995).  

An ambiguity in a
contract may be either patent or latent. 
Id.  A patent ambiguity is evident on the face of
the contract.  Id.  A latent ambiguity arises when a contract
that is unambiguous on its face is applied to the subject matter with which it
deals and an ambiguity appears by reason of some collateral matter.  Id.  When a contract contains an ambiguity, either
patent or latent, the interpretation of the instrument becomes a fact
issue.  Coker v. Coker, 650 S.W.2d 391, 394 (Tex. 1983); Quality Infusion Care, Inc. v.
Health Care Serv. Corp., 224 S.W.3d 369, 379 (Tex. App.—Houston [1st Dist.] 2006,
no pet.).  The trier of
fact must resolve the ambiguity by determining the true intent of the parties.  Coker,
650 S.W.2d at 394–95.
C. 
Early Payments

          Chapman
contends that the term of the alimony payments in the divorce decree was from
February 1, 2002 until February 1, 2005, and Guyton could not extinguish his
obligations under the contract by making an early alimony payment.  The contract, however, expressly states that
Guyton must make alimony payments “on or before the 1st and 15th day of each
month.”  The plain meaning of the term
“before” is “in advance” or “at an earlier time.”  Merriam-Webster’s
Collegiate Dictionary 110 (11th ed. 2003).  We therefore conclude that the phrase “on or
before” permitted Guyton to satisfy his alimony obligation by making payments
before they were due.  See, e.g., Kennedy Ship & Repair, L.P.
v. Pham, 210 S.W.3d 11, 22 (Tex. App.—Houston
[14th Dist.] 2006, no pet.) (holding that term in contract was unambiguous and
should be construed as matter of law). 
Additionally, the parties stated intent regarding the alimony payments
is “the mutual desire . . . to provide a continuing measure of support for
[Chapman], after [the] divorce.” 
Allowing Guyton to make alimony payments early is consistent with this
intent, especially in light of the express language in the contract that allows
payments to be made “on or before” their due date.  See
Frost
Nat’l Bank v. Matthews, 713 S.W.2d 365, 368 (Tex. App.—Texarkana
1986, writ ref’d n.r.e.) (holding that “on or before” term in oil and gas lease
allowed lessee to make shut-in royalty payments early).

Furthermore, the contract
states that “[a]s long
as alimony is payable under this article, [Guyton] will keep the life insurance
at Oldline Life Insurance, Policy Number 5-2063321L in full force and effect,
at [Guyton’s] expense, in the face amount of $50,000.00 naming [Chapman]
irrevocable beneficiary.”  The contract also
states that “[i]t is the intent of [Guyton] and [Chapman] that in the event of
the death of [Guyton] during the term of
the alimony contract that the entire sum of the life insurance proceeds of
$50,000.00 shall be due and payable to [Chapman] in addition to those sums paid
pursuant to the parties[’] monthly contractual alimony package.”  (emphasis added).  This language plainly allows Guyton to change
the beneficiary of the life insurance policy after the completion of his
alimony obligation.  See Breitenfeld, 167 S.W.3d at 841; McLaughlin, 943 S.W.2d at 430.  The phrase, “[a]s long as
alimony is payable under this article,” expressly conditions Guyton’s
obligation to maintain a life insurance policy in favor of Chapman upon the
existence of an obligation to make alimony payments. 

The life insurance policy also allows
Guyton to change the beneficiary.  The
policy provides, “While the insured is alive, the owner may change the
beneficiary or ownership by written notice to us.  When we record the change, it will take
effect as of the date the owner signed the notice, subject to any payment we
make or other action we take before recording.” 


Considering the contract as a whole in light of
the circumstances present when the parties entered it, we hold that the contractual terms
surrounding the early payment of alimony, and Guyton’s ability to change the
beneficiary of the life insurance policy upon payment of the required alimony,
are unambiguous.  See Breitenfeld, 167 S.W.3d
at 841; Universal Health Servs., Inc., 121 S.W.3d at 746; McLaughlin, 943 S.W.2d at 430.  The
contract is worded in such a way that it can be given a certain or definite
legal meaning or interpretation.  See Breitenfeld, 167 S.W.3d at 841; McLaughlin, 943 S.W.2d at 430.  We therefore construe the contractual terms
as a matter of law and hold that Guyton had the ability to make an alimony
payment before it was due, and to change the beneficiary designation of the
life insurance policy after paying all of the required alimony.  See
Breitenfeld, 167 S.W.3d
at 841; McLaughlin, 943
S.W.2d at 430; Heritage Res., Inc.,
939 S.W.2d at 121; Lyons, 701 S.W.2d at 643.        

D.  Assignment

          Chapman
contends that the divorce decree contains an anti-assignment clause that
prohibited Guyton from changing the beneficiary of the life insurance
policy.  Section 9.11 of the divorce
decree states, “Neither the agreement to pay alimony nor the right to receive
alimony under this article is assignable or transferable.”

          The
life insurance policy and the proceeds thereof, however, are not alimony.  The divorce decree expressly provides that
“[Guyton] will pay [Chapman] $2,200.00, per month, in two payments of $1,100.00
each, as and for alimony.”  The
contractual provisions regarding the life insurance policy do not refer to the
policy or its proceeds as alimony. 
Rather, the contract separately refers to the life insurance policy and
the alimony payments in the following excerpt from section 9.6: 

It is the intent of [Guyton] and [Chapman] that in the
event of the death of [Guyton] during the term of the alimony contract that the
entire sum of the life insurance proceeds of $50,000.00 shall be due and
payable to [Chapman] in addition to those sums paid pursuant to the parties[’]
monthly contractual alimony package.  

 

Because the contract is worded in such a way that
it can be given a certain or definite legal meaning or interpretation, we hold that the contractual provision
regarding the assignability of alimony payments is unambiguous and refers only
to Guyton’s bimonthly alimony payment of $1,100.00.  See Breitenfeld, 167 S.W.3d at 841; McLaughlin, 943 S.W.2d at 430.  We therefore hold that the contract did not
prohibit Guyton from changing the beneficiary designation of his life insurance
policy after he paid the required alimony. 
See Breitenfeld,
167 S.W.3d at 841; McLaughlin,
943 S.W.2d at 430; Heritage Res., Inc., 939 S.W.2d at 121; Lyons, 701 S.W.2d at 643.        

E.  Number of Payments

          Chapman
further contends that the divorce decree required seventy-three alimony
payments, not seventy-two.  Thus,
according to Chapman, Guyton breached their contract by changing the
beneficiary designation of the life insurance policy before satisfying his
alimony obligation.  It is undisputed
that Guyton made only seventy-two alimony payments under the contract.  

With respect to the number of
payments, section 9.3 of the divorce decree provides that “[Guyton] will pay to
[Chapman] $2,200.00, per month, in two payments of $1,100.00 each, as and for
alimony.  These payments will be payable
monthly, on or before the 1st and 15th day of each month, beginning on February
1, 2002.”  Section 9.4, which governs the
term of the agreement further provides that “[t]he payments will be payable
until February 1, 2005, or [Chapman] dies, or [Chapman] remarries, whichever
occurs first.”  The central issue here is
whether the divorce decree required Guyton to make an alimony payment on
February 1, 2005.  If the contract
required a February 1, 2005 payment, then seventy-three total payments were due
under the contract and Guyton’s alimony obligation was not complete as of the
date Sheehan changed the beneficiary designation.  If no payment was due on February 1, then
seventy-two total payments were due under the contract, and Guyton fulfilled
his alimony obligation with the final payment made on December 13.

Standing alone, the provision
requiring that alimony payments be made “until February 1, 2005” is reasonably
susceptible to more than one interpretation with regard to the total number of
payments due under the contract.  See Heritage Res., Inc., 939 S.W.2d at 121.  The contract is silent as to whether the
parties intended the term “until” to be a term of inclusion or exclusion, and
the contract does not specify the total number of alimony payments due, nor
does it specify the total dollar amount that Guyton is to pay under the
contract.  See id.  When the phrase “until February 1, 2005” is
read in conjunction with the preceding provision, however, the contract
unambiguously requires Guyton to make seventy-two alimony payments.  The preceding provision expressly states that
“[Guyton] will pay to [Chapman] $2,200.00, per month, in two
payments of $1,100.00 each, as and for alimony. 
These payments will be payable monthly, on or before the 1st and 15th
day of each month, beginning on February 1, 2002.”  This provision unambiguously requires Guyton
to make two payments each month of $1,100. 
See Breitenfeld, 167 S.W.3d at 841; McLaughlin, 943 S.W.2d at 430.  Construing
the contract to require an additional alimony payment on February 1, 2005 would
violate the provision requiring two monthly payments.  See
Dorsett, 164 S.W.3d at 662 (holding that courts should examine and
consider the entire contract in an effort to harmonize and give effect to all
the provisions of the contract so that none will be rendered meaningless).  We therefore hold that the term “until” was
intended to exclude February 1, 2005 as an alimony payment due date.  See
Breitenfeld, 167 S.W.3d
at 841; Dorsett, 164
S.W.3d at 662; McLaughlin,
943 S.W.2d at 430.  Accordingly, Guyton
satisfied his obligations under the contract by making seventy-two alimony
payments.  See Breitenfeld,
167 S.W.3d at 841; McLaughlin,
943 S.W.2d at 430; Heritage Res., Inc., 939 S.W.2d at 121; Lyons, 701 S.W.2d at 643.

F.  Newly Discovered
Evidence

          Finally,
Chapman contends that the trial court erred in granting summary judgment in
favor of Abbot, Burks, and Sheehan because genuine issues of material fact
exist with regard to the validity of the power of attorney.  After the trial court granted summary
judgment, Chapman moved for a new trial, asserting that she had discovered new
evidence that the general power of attorney designating Sheehan as Guyton’s
attorney-in-fact was a forgery.  The
trial court denied Chapman’s motion for new trial.  Chapman now asserts that the evidence
suggesting that the power of attorney was forged creates a fact issue that
should have precluded the summary judgment. 

A party who seeks a new trial on the ground of newly discovered evidence must
satisfy the court that (1) the evidence has come to his knowledge since the trial, (2) it was not owing to want of
due diligence that the evidence did not come to his attention sooner, (3) the evidence is
not cumulative, and (4) the evidence is so material that it would probably produce a different
result if a new
trial
were granted.  Jackson v. Van Winkle, 660 S.W.2d 807, 809 (Tex.
1983), overruled on other grounds; Summers
v. WellTech, Inc., 935
S.W.2d 228, 233 (Tex. App.—Houston [1st Dist.] 1996, no writ).  We review the trial court’s denial of a motion for new
trial for an abuse of discretion.  Jackson, 660 S.W.2d at 809.
          In her motion for new trial,
Chapman produced the affidavit of a handwriting examiner who testified that the
power of attorney in favor of Sheehan was a forgery.  The trial court denied the motion, stating
that Chapman failed to exercise due diligence in obtaining the new evidence,
and that Chapman should have anticipated the need for expert testimony. 

Chapman’s motion for new
trial does not explain why she could not have obtained the new evidence before
the submission date of the motion for summary judgment.  Chapman has therefore failed to demonstrate
that it was not owing to want of due diligence that the evidence did not come to her attention sooner.  See
Jackson, 660 S.W.2d at 809; Summers, 935 S.W.2d at 233.  We hold that the trial
court did not abuse its discretion in denying Chapman’s motion for new
trial.  See Xenos Yuen v. Fisher, 227 S.W.3d 193, 204—05 (Tex. App.—Houston
[1st Dist.] 2007, no pet.) (holding that trial court did not abuse its
discretion in denying motion for new trial because appellant failed to demonstrate
that it was not through want of diligence that he did not obtain new evidence
sooner); Mayhew
v. Dealey, 143 S.W.3d 356, 367 (Tex. App.—Dallas 2004,
pet. denied) (same); GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.,
126 S.W.3d 257, 262 (Tex. App.—San Antonio 2003, pet. denied) (same).

G.  Conclusion

We hold that Abbot, Burks, and Sheehan
established as a matter of law that Guyton discharged his obligation to pay
alimony and did not breach the divorce decree by changing the beneficiary
designation of the life insurance policy after satisfying his obligation.  See
Tex. R. Civ. P. 166a(c); Knott, 128 S.W.3d at 215–16. 
As the new
beneficiaries of the policy, Abbot, Burks, and Sheehan were entitled to the
proceeds of the policy upon Guyton’s death. 
The trial court therefore properly granted summary judgment.

Conclusion

          We hold that
the trial court properly granted summary judgment because the movants
established that (1) the terms of the decree are unambiguous; (2) no issues of
material fact exist; and (3) they are entitled to judgment under the terms of
the decree and the life insurance policy. 
We therefore affirm the judgment of the trial court. 

 

                                                                   Jane Bland

                                                                   Justice

 

Panel consists of Chief Justice
Radack and Justices Alcala and Bland.











[1] We note that Chapman alternatively contends that we
should reverse the judgment of the trial court and render a judgment in her
favor if we determine that no genuine issues of material fact exist.  Chapman, however, did not move for summary
judgment at trial—she merely responded to Abbot, Burks, and Sheehan’s motion
for summary judgment.  “Before an appellate court may reverse summary judgment for
one party and render judgment for the other party, all parties must have sought
final judgment relief in their cross-motions for summary judgment.”  Montgomery
v. Blue Cross & Blue Shield of Tex., Inc., 923 S.W.2d 147, 152 (Tex. App.—Austin
1996, writ denied); Hitchcock v. Bd. of Trustees, No.
01-06-00376-CV, 2007 WL 1500305, at *3 (Tex. App.—Houston [1st Dist.] May 24, 2007, no pet.).