

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00441-CV

_____

JAMES DONALD TATE AND MICHAEL CUFFIA, Appellants

V.

REX HANSEN, Appellee

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-332119-22

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

In this business dispute, Appellants James Donald Tate and Michael Cuffia sued RPP Holdings, LLC (RPP) and Appellee Rex Hansen for money they claimed was owed them after RPP's assets were sold to another company. Hansen filed a special appearance, arguing that the trial court did not have personal jurisdiction over him. The trial court granted the special appearance, and Appellants filed this interlocutory appeal to challenge that ruling. *See* Tex. Civ. Prac. Rem. Code Ann. § 51.014(a)(7) (permitting interlocutory appeal from trial court order granting defendant's special appearance). We will affirm.

## I. BACKGROUND

RPP is a Michigan company in the foam-manufacturing industry. Hansen is RPPs managing "Administrative Member" who has been with RPP since its founding in 2011. He has never resided in Texas. Tate and Cuffia are Texas residents and former members of RPP. Tate joined RPP as a consultant in 2012 and eventually became RPP's president. Cuffia joined RPP as its director of operations in 2015. During their tenures at RPP, Tate and Cuffia commuted from their homes in Texas to the company's headquarters in Michigan.

In 2018, Pregis Performance Products, LLC (Pregis) purchased RPP's assets, and Tate and Cuffia started working for Pregis. After the sale, a dispute arose over the amounts that were to be paid from the proceeds of the sale to Tate and Cuffia. Tate and Cuffia contended that Hansen had diluted RPP's equity to reduce the

2

amount owed to them. They also claimed that Hansen (in his individual capacity) and RPP had agreed to pay them large sums from RPP's outstanding receivables after the sale closed. RPP and Hansen contended that Tate and Cuffia had received secret "super bonuses" from Pregis for driving down the sales price of RPPs assets.

The parties sued each other in various lawsuits, both in Texas and Michigan courts. In the instant suit, Tate and Cuffia sued RPP and Hansen for breach of contract, breach of fiduciary duty, and unjust enrichment.

In their original petition, Tate and Cuffia pleaded that Hansen was an Oregon resident and generally that the trial court "ha[d] personal jurisdiction over the parties." Hansen filed a special appearance, arguing, among other things, that the few contacts he had had with Texas had all occurred within his duties as an employee of RPP or on unrelated matters. He declared that

- He was a Nebraska resident;

- He did not reside in Texas and had never owned personal or real property here;

- He was not a party to any of the prior-filed lawsuits involving RPP or any of the sued-upon contracts;

- In 2010 he purchased a judgment against a Texas resident from a bankruptcy trustee, instituted post-judgment collection efforts, and travelled to Texas in 2015 to attend one hearing on the matter;

- He visited Texas in 2015 as the corporate representative for another company involved in a lawsuit in an unrelated matter;

- He visited Tate and Cuffia in Texas as part of his responsibilities as RPP's manager; and

- He has not, in his individual capacity, contracted with any Texas residents, committed a tort in Texas, or recruited Texas residents for employment.

Tate and Cuffia then filed their first amended petition. On the issue of the trial court's personal jurisdiction over Hansen, they added allegations that Hansen had purposefully availed himself of Texas's general and specific jurisdiction based on the following contacts:

1. Hansen "has had frequent business contacts with Texas and has made numerous trips to Texas . . . to discuss RPP business." He met with Tate and Cuffia in Texas "to discuss their employment with RPP and on one occasion to talk Tate out of resigning from RPP." They met at various Texas hotels and restaurants to "discuss the business of RPP."

2. As the day-to-day manager and "controlling owner" of RPP, Hansen made recent trips to Texas in connection with an unrelated lawsuit. During these trips, he testified at trial and stayed overnight in Dallas.

3. Hansen is "party to a contract with Tate and Cuffia which obligated him and RPP to pay monies to Tate and Cuffia, in Texas." As part of the sale of RPP, "Tate and Cuffia demanded of Hansen that they be paid separately and personally with receivables of RPP, separate and apart from the sale . . . . Thereafter . . . a separate agreement was struck between Tate and Cuffia on the one hand and Hansen and RPP on the other hand whereby Tate and Cuffia were to be paid [certain amounts] from the accounts receivable to be paid to RPP after the closing."

Tate and Cuffia also filed their own declarations and a copy of Hansen's deposition that had been taken for special-appearance purposes. Tate declared that he had frequently spoken on the phone from Texas with Hansen and that he had met with Hansen in Texas "many" times. According to Tate, these "were purposeful

4

meetings set up by Rex Hansen to further the business of RPP." Tate further declared that he had been in Texas when Hansen agreed via email and phone calls to pay Tate and Cuffia money from RPP's outstanding receivables once the asset sale closed.

Cuffia also declared that Hansen had made "many trips" to Texas to meet with him and Tate "concerning the business of RPP." In Cuffia's view, these "were not fortuitous trips to Texas, but purposeful ones to meet and discuss RPP business."

At his deposition, Hansen testified that RPP had sued Tate and Cuffia in Texas in a separate lawsuit and that he had been one of three RPP representatives responsible for filing that suit in 2018. Within that lawsuit, Hansen had travelled to Texas to attend a hearing. He testified that RPP had gone to trial on another unrelated matter in Dallas in August 2022. In that case, Hansen attended a deposition and a three-day trial as RPP's "authorized representative."

Hansen testified that he had met with Tate and Cuffia in Texas "once or twice" and that he had attended all of these meetings as a representative of RPP for business purposes.[1] As to the asset sale, Hansen said that RPP had received all consideration from the sale and that the proceeds had been used to pay creditors. The accounts receivable that were collected after closing were used to pay RPP's bills. Hansen said

---

[1]When asked about the non-RPP-related Texas lawsuits that he had been involved in, Hansen provided substantially the same facts as from his declaration.

that all of his dealings with Tate and Cuffia had occurred within the context of RPP's business.

A hearing was held on the special appearance at which no new evidence was proffered. At the hearing, Tate and Cuffia's attorney explained his belief that personal jurisdiction over Hansen was based largely on the alleged personal guaranty, which he said existed in emails sent to his clients from Hansen. The trial court then pressed for evidence of these emails:

The Court: And so where is the guarant[y]?

[Counsel]: In their emails of their oral - -

The Court: Show me which ones. Which email is the guarant[y] in?

[Counsel]: Well, they're not - - they're not a part of the record, I don't think, but they're alleged. I mean, it - - there was an oral agreement that was confirmed by email. Those emails make up the agreement that - -

The Court: I just want to see the oral agreement where he guaranteed that the payments would be made personally.

[Counsel]: Well, I don't - - they're probably somewhere in the documents that are attached in the lawsuit. I don't have those in front of me.

The Court: Because that is the relevant context he would have had with the state to make him - - make us have jurisdiction over him, is making the guarant[y], whether by email or not, but he made the guarant[y] and sent it to Texas, and so I would say that is the minimum contact. I just need to see the guarant[y] in writing.

[Counsel]: Okay. Well, that's what he did - -

The Court: Okay. Where is the guarant[y] in writing?

6

Tate and Cuffia's attorney was not able to proffer the emails at the hearing and, instead, explained his belief that they had been attached to the amended petition.[2]

After the hearing, the trial court granted the special appearance and dismissed Hansen from the suit. Tate and Cuffia then filed a letter with the trial court in which they conceded that the personal-guaranty emails had not been in evidence prior to the hearing but argued that it was sufficient that they had pleaded the guaranty's existence. Based on this additional information, they asked the trial court to reconsider its ruling. The trial court then issued its Order Reconsidering Order Granting Defendant Rex Hansen's Special Appearance in which it ordered that the special appearance "remain[ed] GRANTED." No findings of fact and conclusions of law were requested or filed.

## II. STANDARD OF REVIEW

We review de novo a trial court's determination of a special appearance. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). However, the trial court must often resolve fact questions before deciding the jurisdiction issue. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). In doing so, the trial court has the sole discretion to determine the credibility of the witnesses and to resolve conflicts in the evidence. *Xenos Yuen v. Fisher*, 227 S.W.3d 193, 203–04 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Thus, when, as here, the trial court does not issue

---

[2]There are no exhibits or emails attached to either the original petition or the first amended petition.

7

findings of fact and conclusions of law with its special appearance ruling, we must imply all facts necessary to support the judgment and supported by the evidence. *Id.*

## III. RELEVANT LAW

### A. PERSONAL JURISDICTION

Texas courts have personal jurisdiction over a nonresident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction does not violate federal and state due process guarantees. *Kelly*, 301 S.W.3d at 657. Texas's long-arm statute allows the trial court's jurisdiction to reach as far as the federal constitutional requirements will allow. *Id.* "Personal jurisdiction is consistent with due process when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with the traditional notions of fair play and substantial justice." *Id.* (internal quotations omitted). "A defendant establishes minimum contacts with a state when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of the law." *Id.* at 657–58.

### B. SPECIAL-APPEARANCE PROCEDURE

The plaintiff and defendant bear shifting burdens in a challenge to personal jurisdiction. *Id.* at 658. The Texas Supreme Court has explained this burden-shifting process as follows:

> We have consistently held that the plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. Once the plaintiff has pleaded

8

sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading.

If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute . . . , the defendant need only prove that it does not live in Texas to negate jurisdiction. When the pleading is wholly devoid of jurisdictional facts, the plaintiff should amend the pleading to include the necessary factual allegations, *see* Tex. R. Civ. P. 63, thereby allowing jurisdiction to be decided based on evidence rather than allegations, as it should be.

The defendant can negate jurisdiction on either a factual or legal basis. Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction.

*Id.* at 658–59 (internal citations omitted).

## IV. DISCUSSION

In two issues argued jointly, Tate and Cuffia contend that the trial court erred by (1) granting Hansen's special appearance and (2) denying their request to reconsider its order granting the special appearance. They argue that the trial court erred because the pleadings and evidence showed that it had specific (rather than general) personal jurisdiction over Hansen. They point to the following facts as raising sufficient minimum contacts between Hansen and Texas: (1) Hansen

9

personally guaranteed that he would pay each of them (in Texas) after the Pregis sale closed; (2) this agreement was made via emails and phone calls between the parties while Tate and Cuffia were in Texas and using their Texas-based email addresses; (3) Hansen knew that they were in Texas; and (4) Hansen failed to pay them the money. In other words, Tate and Cuffia argue that the trial court's specific personal jurisdiction over Hansen was established solely through the alleged personal guaranty and its attendant negotiations.[3]

Personal jurisdiction over a nonresident defendant exists if his minimum contacts give rise to either general or specific jurisdiction. *BMC Software*, 83 S.W.3d at 795. Specific jurisdiction exists when the defendant's purposeful contacts are "substantially connected to the operative facts of the litigation or form the basis of the cause of action." *Old Republic Nat'l Title Co. v. Bell*, 549 S.W.3d 550, 559–60 (Tex. 2018). In analyzing for specific jurisdiction, the focus is on "the relationship between the forum, the defendant, and the litigation." *Id.* at 559.

---

[3]To the extent that Tate and Cuffia argue that Hansen's travels to Texas for RPP business and unrelated lawsuits provided sufficient minimum contacts—an argument that is not apparent from their appellants' brief—we overrule this argument. It is well-settled that a nonresident corporate officer or employee is protected from a trial court's exercise of personal jurisdiction when all of his contacts with Texas were made on behalf of the employer. *Nichols v. Tseng Hsiang Lin*, 282 S.W.3d 743, 750 (Tex. App.—Dallas 2009, no pet.); *see Booth v. Kontomitras*, 485 S.W.3d 461, 482 (Tex. App.—Beaumont 2016, no pet.) ("As a general rule, a court may not assert personal jurisdiction over an individual based on the individual's relation to a corporation unless the corporation is the individual's alter ego."). It is undisputed that Hansen took these trips to Texas as a representative of RPP, and Tate and Cuffia have not pleaded or argued any piercing-the-corporate-veil or alter-ego theories.

The evidence related to the personal guaranty was conflicting. Tate and Cuffia declared that they had negotiated from Texas with Hansen via email and phone to strike an agreement under which Hansen personally guaranteed them payment from RPP's outstanding receivables and that these payments would be made to them in Texas. Hansen, on the other hand, declared that he had never contracted with any Texas residents in his personal capacity and that all of his dealings with Tate and Cuffia had occurred in his capacity as RPP's representative. Further, Tate and Cuffia conceded that the record did not contain documentary evidence of the personal guaranty, and we see no such evidence upon our own search of the record.

The question of specific jurisdiction over Hansen rested solely on whether he had, in a personal capacity, negotiated and entered into the guaranty. Because the trial court granted the special appearance, we imply that it found that Hansen had not done so. *Xenos Yuen*, 227 S.W.3d at 203–04. In light of the conflicting record, and because the trial court had full discretion to determine the evidence's credibility and to resolve those conflicts, *see id.*, we conclude that the evidence supported this implied finding. Accordingly, we hold that Hansen did not have sufficient minimum contacts with Texas to subject him to the exercise of specific jurisdiction and that the trial court did not err by granting the special appearance or by denying Tate and Cuffia's reconsideration request.[4] We overrule Tate and Cuffia's issues.

---

[4]Even assuming arguendo that Hansen had personally negotiated and entered into the guaranty to pay Tate and Cuffia in Texas, such contacts alone would likely

## V. CONCLUSION

Having overruled both of Appellants' issues, we affirm the trial court's granting of the special appearance.

/s/ Brian Walker

Brian Walker
Justice

Delivered:  August 22, 2024

---

not have been enough to assert specific jurisdiction over him. *See McLean v. Paradigm SRP LLC*, No. 04-22-00449-CV, 2023 WL 7133438, at *5 (Tex. App.—San Antonio Oct. 31, 2023, no pet.) (mem. op.) ("Merely contracting with a resident of the forum state or engaging in communications during performance of the contract generally is insufficient to subject a nonresident to the forum's jurisdiction."); *see also Old Republic*, 549 S.W.3d at 562 ("Generally, money sent to the forum state is not determinative in establishing that a defendant purposefully availed itself of Texas's jurisdiction.").